**UNITED STATES of America, Plaintiff**

**v.**

**Aron LICHTENBERGER, Defendant.**

**Case No. 3:12CR570.**

United States District Court,
N.D. Ohio,
Western Division.

Filed April 30, 2014.

Timothy C. Ivey, Office of the Federal Public Defender, Northern District of Ohio, Cleveland, OH, Gregory S. Geist, Office of the Federal Public Defender, Northern District of Ohio, Toledo, OH, for Defendant.

Gene Crawford, Office of the U.S. Attorney, Northern District of Ohio, Toledo, OH, for Plaintiff.

## ORDER

JAMES G. CARR, Senior District Judge.

This is a criminal case in which the government has charged the defendant Aron Lichtenberger with possession and distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2), (a)(4)(B), and (b). Pending is his motion to suppress evidence of child pornography on his laptop. (Doc. 19).[1] Following a hearing on November 21, 2013, and subsequent briefing, the motion is decisional.

For the reasons that follow, I grant the motion.

### Background

On November 26, 2011, in the afternoon, Lichtenberger was with Karley Holmes, his girlfriend, at their shared home in Cridersville, Ohio. They lived there with Holmes's mother, who owned the residence. That day, two friends of Holmes's mother came over to the residence and told both Holmes and her mother that Lichtenberger had been previously convicted of child pornography offenses.

One of the mother's friends then called the police. Several officers, including

---

1. Defendant initially argued in his motion that there was also a *Miranda* violation. He has since abandoned that claim. (Doc. 28, at 2 n. 1). Thus, this decision deals only with defendant's motion to suppress his laptop.

Douglas Huston, from the Cridersville Police Department came to the residence. Holmes requested that the police escort Lichtenberger off the property because she did not want him living there anymore. Officer Huston determined that Lichtenberger had an active warrant for his arrest for failing to register as a sex offender, arrested him, and removed him from the property.

Later that day, Holmes went into the bedroom she shared with Lichtenberger and retrieved his laptop. At the suppression hearing, she testified that she wanted to access his laptop because defendant "would never let me use it or be near him when he was using it and I wanted to know why." (Doc. 24, at 16). The laptop was password protected, but Holmes hacked the laptop by running a password recovery program. She then changed the password.

Once she accessed the laptop, she clicked on different folders and eventually found thumbnails images of adults engaging in sexual acts with minors. She clicked on one of the thumbnails to see the larger image. When she found the first image, she took the laptop to the kitchen to show her mother. There, they clicked through several more sexually-explicit images involving minors. She closed the laptop and called the Cridersville Police Department.

Officer Huston returned to the residence. In the kitchen, Holmes told the officer that she found child pornography on the defendant's laptop. She also told him that the laptop belonged to the defendant and that he was the only one who would access and use it. She explained that one time she tried to use the laptop and the defendant immediately became upset and told her to stay away from it. Lastly, Holmes told Officer Huston that she hacked the laptop to access it because it was password protected.

Officer Huston then asked Holmes if she could boot up the laptop to show him what she had discovered. Holmes opened the laptop lid and booted it up to take it out of sleep mode. She then reentered the new password she created. Officer Huston asked her to show him the images. Holmes opened several folders and began clicking on random thumbnail images to show him. Officer Huston recognized those images as child pornography. He then asked Holmes to shut down the laptop.

After consulting with his police chief over the phone, Officer Huston asked Holmes to retrieve other electronics belonging to Lichtenberger. She gave him Lichtenberger's cell phone, flash drive, and some marijuana. Officer Huston then left the premises with those items, the laptop, and its power cord.

### Discussion

The Fourth Amendment establishes that "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

Under the private search doctrine, however, this protection applies only to government action. *U.S. v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). It is "wholly inapplicable 'to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.'" *Id.* (quoting *Walter v. United States,* 447 U.S. 649, 662, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980) (Blackmun, J., dissenting)).

Defendant contends that I should suppress his laptop as evidence for four reasons: 1) the private search doctrine does

not apply to private residences; 2) Holmes acted as an agent of Officer Huston; 3) Officer Huston's search exceeded the scope of Holmes's initial search; and 4) in any event, Officer Huston did not have probable cause to search the computer.

### 1. The Private Search Doctrine's Applicability to Private Residences

■ Lichtenberger first argues that the private search doctrine, as articulated in *Jacobsen, supra,* does not apply in this case because the Sixth Circuit has refused to extend its applicability to private residences per its holding in *United States v. Allen,* 106 F.3d 695 (6th Cir.1997). Thus, defendant contends that because he resided in the home in which he kept his laptop and it was password protected, he had a legitimate and significant privacy interest which Officer Huston unreasonably breached.

The government argues that *Allen* is not applicable in this case because neither Holmes nor Officer Huston conducted a search of the residence but rather a search of only Lichtenberger's laptop. Relying on *Jacobsen, supra,* the government contends that the search of the laptop is akin to the search of a suitcase, locker, or container—not an entire residence.

In *Jacobsen,* 466 U.S. at 111, 104 S.Ct. 1652, per the company's policy regarding insurance claims, Fed Ex employees opened a package damaged in transit. Inside the package was crumpled newspapers covering a ten-inch tube. The employees cut open the tube and found four zip-lock plastic bags containing white powder. *Id.* They called the Drug Enforcement Administration (DEA) and then put the bags back in the tube and the tube and newspapers back into the box. When the DEA agent arrived, he saw the open box and removed the four bags from the tube, opened them, and identified the white substance inside them as cocaine. *Id.* at 111–112, 104 S.Ct. 1652.

The Supreme Court held that the Fed Ex employees' initial search was a private action that did not violate the Fourth Amendment because of their private character. *Id.* at 115, 104 S.Ct. 1652. Reasoning that the DEA agent acted merely to confirm the Fed Ex employees' recollection, the Court further held that the DEA agent's viewing "of what a private party had freely made available for his inspection did not violate the Fourth Amendment." *Id.* at 119, 104 S.Ct. 1652.

In contrast, in *Allen, supra,* 106 F.3d at 697, the manager of a motel suspected that the defendant did not pay his bill so she entered his motel room with her key to see if he was still there. She observed large quantities of marijuana in the bathroom as well as bricks of marijuana laying in open dresser drawers. *Id.* She then called the police who entered the motel room and viewed it for about fifteen seconds, observing the marijuana. The officers left the room and waited for the defendant to return to the motel room whereupon they arrested him.

The court in *Allen* distinguished the motel room from the package in *Jacobsen,* noting that the package only contained contraband while the motel room was a temporary residence containing personal possessions. *Id.* at 699. The court stated that the defendant's privacy interest was not entirely extinguished simply because the motel manager viewed some of the room's contents. The court then held that it was "unwilling to extend the holding in *Jacobsen* to cases involving private searches of residences." *Id.* The court did, however, find that the defendant's privacy interest was extinguished because his rental period had elapsed and thus he no longer had a legitimate expectation of privacy

in the room. *Id.* at 700. Thus, the officers' search was not unconstitutional because it was undertaken with the motel manager's consent and after the defendant's privacy interest had extinguished. *Id.* at 701.

I find the government's argument persuasive. Unlike *Allen,* the officer here did not search Lichtenberger's residence— only his laptop. Holmes called the police to her house and Officer Huston spent time only in the kitchen, a space shared by Holmes, her mother, and Lichtenberger. In *Allen,* the officers searched the defendant's entire residence which had been under only his control until the manager entered it. Defendant also cites *United States v. Spicer,* 432 Fed.Appx. 522 (6th Cir.2011) and *United States v. Williams,* 354 F.3d 497 (6th Cir.2003), for support but both of those cases are like *Allen* in that officers searched actual residences.

While a laptop is not like the simple container in *Jacobsen,* it also is not the same as a private residence. Laptops are highly personal items which contain a multitude of personal information, and laptop owner's have a reasonable expectation of privacy in their files. At the same time, laptops do not and cannot fulfill the same function as a private residence.

Lichtenberger's argument that his case is most similar to *United States v. Crist,* 627 F.Supp.2d 575 (M.D.Pa.2008), misses the mark. In that case, a private citizen discovered child pornography on the defendant's laptop and called the police. The police took the laptop into evidence and a detective conducted a forensic examination on the laptop's hard drive, essentially giving officers access to all the contents of the laptop. *Id.* at 585–586. The court rejected the government's contention that the laptop was akin to a single closed container and found that the search using the forensic software implicated the defendant's Fourth Amendment rights. *Id.* at 586.

While I agree with the court in *Crist's* holding that a laptop is not the same as a closed container, the facts of *Crist* simply do not shed any light here. In *Crist,* a detective conducted a highly intrusive forensic evaluation on the laptop while here, Officer Huston asked Holmes to show him only the sexually-explicit images she had seen. Thus, even though a search of a laptop has the potential to be highly intrusive, that did not happen here.[2]

A better comparison with the facts at hand is *United States v. Benoit,* 713 F.3d 1 (10th Cir.2013). In *Benoit,* the defendant's girlfriend discovered child pornography on the defendant's computer. She called the police to the residence which she shared with the defendant. She then showed an officer the sexually explicit videos. *Id.* at 7. The court found that the private search doctrine applied because the girlfriend's opening of the computer files—and only those files—was akin to the opening of a package. *Id.* at 10 n. 1.

Thus, I find that the private search doctrine applies in this case.

**2.** Lichtenberger cites to *United States v. Flores–Lopez,* 670 F.3d 803, 805 (7th Cir. 2012), to support its contention that searching a computer is more invasive that a container. In that case, the court found that a cell phone is essentially a computer nowadays and is different than a simple container. The court held, however, that the search of the defendant's cell phone was constitutional because it was limited to finding the phone number of a drug dealer. Thus, the search was not so intrusive as to violate the defendant's Fourth Amendment rights.

This case works against defendant's argument. Like the search of the cell phone which was limited to a telephone number, Officer Huston's search of the laptop was limited to the offensive images.

## 2. Acting as an Agent of the Government

■ The protections of the Fourth Amendment do not apply to a search or seizure "effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any government official." *Jacobsen, supra,* 466 U.S. at 113, 104 S.Ct. 1652. Thus, I must determine whether Holmes acted as an agent of Officer Huston. If she did, I must suppress the laptop as evidence.

■ The Sixth Circuit uses a two-factor analysis to determine whether a private party acts as an agent of the government: 1) the government's knowledge or acquiescence to the search; and 2) the intent of the party performing the search. *United States v. Bowers,* 594 F.3d 522, 525–526 (6th Cir.2010) (citing *United States v. Hardin, supra,* 539 F.3d 404, 418 (6th Cir. 2008)). If "*the intent of the private party* conducting the search *is entirely independent* of the government's intent to collect evidence for use in a criminal prosecution," then "the private party is not an agent of the government." *Id.* at 526 (emphasis in original).

The government argues that the intent behind Holmes's search of Lichtenberger's laptop was to satisfy her curiosity. She testified that she was not looking for evidence of a crime but was "just generally looking for anything." (Doc. 24, at 40). The government also notes that when the police first came to Holmes's residence to arrest Lichtenberger, no one instructed or encouraged Holmes to search the home for evidence. The government contends that because Holmes was the person who hacked into the laptop, clicked on the folders, and controlled the laptop, there was no governmental action.[3] Finally, the government contends that Officer Huston's actions to boot up the computer and enlarge three or four images were merely to confirm Holmes's complaint. In other words, he never participated or affirmatively encouraged Holmes's private search.

Lichtenberger argues that the government is conflating the first and second searches. He agrees that the first search, in which Holmes discovered the child pornography, is not government action. He contends that the second search is, however, because Officer Huston actively directed Holmes to conduct the search, thereby making her an agent of the government.

Lichtenberger argues that Officer Huston specifically asked Holmes to boot up the computer and show him the pictures. He contends that when Holmes showed him the images, per his request, her intent was not entirely independent of the government's intent to collect evidence. At that point, she was directly following his instructions and, accordingly, her intent was to assist him in his investigation.

I find the defendant's arguments persuasive. It is uncontested that the first search was entirely a private action. Thus, the fact that the police officers did not ask or encourage Holmes to search for evidence when they arrested Lichtenberger is simply of no relevance. As Holmes testified, she acted out of curiosity.

The second search, however, constitutes government action. When Officer Huston came to Holmes's residence, he gave her several directions. He directed her to boot up the laptop and she complied. He asked her to see the images and she showed him. Even though he was not

---

**3.** The government concedes that apparent authority is not at issue in this case. Holmes told Officer Huston that the laptop belonged exclusively to Lichtenberger and that she hacked it to access its files. Thus, Officer Huston was on notice that Holmes had no authority to show him images on the laptop.

touching the laptop, he would not have seen the images without instructing Holmes to show them to him.[4] By giving her instructions and directing her actions, she became an agent of the officer. *See United States v. Robinson*, 390 F.3d 853, 872 (6th Cir.2004) (finding that a private citizen was not an agent because the police "neither asked nor otherwise encouraged" him to open a package containing narcotics).

Again, *Benoit, supra*, is a useful comparison. In *Benoit*, the defendant's girlfriend called police to their shared residence and showed the police child pornography on the defendant's computer. The court held that the "search cannot be characterized as governmental action because [the officer] did not affirmatively encourage, initiate or instigate the private action." 713 F.3d at 10 (internal quotations and citations omitted). The officer did not direct the defendant's girlfriend to show him the file but rather acted as "merely a witness" and "passively viewed" the file. *Id.*

In contrast, Officer Huston specifically asked Holmes to open the laptop and show him the images. He was actively directing her, not merely passively viewing. Thus, this second search was not private in nature. It was at the behest of Officer Huston, who, arguably, could have gotten a warrant to search the laptop. Holmes opening the closed laptop is no different

than someone opening a door because an officer told her to do so. Likewise, Holmes opening the laptop files was no different than if she had been told to open dresser drawers, a closet, or a physical file cabinet. Both activities were at the direction and subject to the control of the officer.

Additionally, the government's contention that, per *Jacobsen*, the officer was merely confirming Holmes's description is without merit. In *Jacobsen*, the Court held that there was "virtual certainty" the DEA agent's manual inspection of a simple container "would not tell him anything more than he already had been told." 466 U.S. at 119, 104 S.Ct. 1652. As I explained, however, the search of a laptop is far more intrusive than the search of a container because the two objects are not alike. Unlike *Jacobsen*, here, given the amount of data a laptop can hold, there was absolutely no virtual certainty that the search of Lichtenberger's laptop would have not told Officer Huston more than he had already been told.

Thus, I find there was government action. Because Lichtenberger had a reasonable expectation of privacy in the contents of his laptop, and Officer Huston breached that expectation without obtaining a warrant, I must suppress the laptop as evidence.[5]

---

4. Because the laptop lid was closed, in sleep mode, and password protected, there is no way that Officer Huston could have seen the images in plain view. Thus, the government's comparison of this case to *Bowers, supra*, is inapposite. In *Bowers*, the defendant's roommates found a photo album of child pornography in the defendant's room. They called the FBI. When the FBI agents arrived at the house, "the album was located on the dining room table, in a shared space, and was readily visible." 594 F.3d at 526.

5. Officer Huston's actions may also be analyzed using the trespass formulation articulated in *United States v. Jones*, —— U.S. ——, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012). In *Jones*, the Court held that a search was trespass "conjoined with ... an attempt to find something or obtain information." *Id.* at 951 n. 5. Here, there was an actual, physical intrusion upon a closed entryway—the laptop's lid. Then, there was a virtual intrusion—the viewing of the files on the laptop. Holmes, acting as an agent for the government, did both for the purpose of obtaining information about the defendant.

### 3. Scope of the Search & Probable Cause

Because I find the government violated the defendant's Fourth Amendment rights by searching his laptop without getting a warrant, defendant's arguments regarding the scope of the search and whether Officer Huston had probable cause to search the computer are moot.

### Conclusion

It is, accordingly,

ORDERED THAT defendant's motion to suppress (Doc. 19) be, and the same hereby is granted.

So ordered.